Case number 215228 USA ex rel Paul Dorsa v. Miraca Life and Sciences Inc. Argument not to exceed 15 minutes per side. Mr. Barmack you may proceed for the Thank you. May it please the court David Barmack for appellant Miraca Life Sciences. Your honors the district court made several errors here. Under this court's precedence, especially Blanton and McGee, it should have found that the party's arbitration agreement clearly and unmistakably delegated to the AAA, the American Arbitration Association, jurisdiction to decide whether or not Mr. Dorse's false claim retaliation claim is arbitrable. Instead, it decided the issue of arbitrability and did so in part because of its interpretation of a carve-out clause in the party's agreement. Both of those steps were erroneous. But counsel, didn't you ask the district court to decide the question of arbitrability by filing a motion to compel arbitration and invoking the stay? No, your honor, I think not. So we filed, we did first file a motion to dismiss on jurisdictional grounds, invoking the FAA at that time, although the court has found that that was in in the prior ruling that that was insufficient to warrant and to be appealed from. When we did that, we did not believe that arbitrability was even an issue. To us, clearly, the FCA is covered by FCA retaliation claims are covered by the arbitration clause. As soon as the issue of arbitrability was put in play by the opposition to the motion filed by Mr. Dorse's counsel, we then in our reply immediately said, well, if that if that issue is being challenged and being put before the court, that is an issue that must itself be decided as by an arbitrator. So we did that very promptly and at the first opportunity, once it was known that it was an issue at all. But why wasn't your first opportunity to just say to the district court, we're moving to compel arbitration and the question of arbitrability isn't for you, it's for the arbitrator. I mean, otherwise what I'm worried about is that everybody will do exactly what you did here. So whether you I'm not saying that you are engaged in gamesmanship, but we might be writing a road map for gamesmanship in the future, which would be I'll take my bite with the district court. I'll see if the district court agrees with me that this claim should be arbitrated and I'll move to dismiss on those grounds. And then if it doesn't look like that's going well, then I can say, well, judge, if you agree with me, you should agree with me and you should dismiss. But if you don't agree with me, I'd like to ask somebody else if they will agree with me. It's a fair point. And given that this court's ruling of the earlier case, I could assure you that I and presumably others will see that it's an ineffective road map. But it was not it was not, in fact, about gamesmanship. The issue for us was that this was the wrong court by any measure under Mr. Dorsey's agreement that the arbitration and arbitration should have been filed in Dallas, Texas. And even if a lawsuit was to be filed, it belonged in Dallas, Texas. And recall that Mr. Dorsey's position is that we could not compel a district court in the Sixth Circuit to compel. We could not ask a district court in the Sixth Circuit to compel arbitration in a jurisdiction outside the circuit. So our position was simply this. This does not belong in this jurisdiction by any measure. And we filed on venue grounds. We filed under 12B1, B6, and B3, if I recall correctly. This does not belong in this court by any measure. And we were very clear in the conclusion to the memoranda that we filed with the court in support of that initial motion to dismiss. This should be dismissed, and Mr. Dorsey should pursue arbitration, whatever relief he wants. And in our view, that meant he should have filed for arbitration in Texas if he preferred, because he thought he had a right to go to court. He could have filed for a lawsuit in the Fifth Circuit in Dallas as well. But in all, by all measures, the District of Tennessee had nothing to do with this case insofar as the agreement required that it be pursued elsewhere. Mr. Bromack, I just have a quick question. The circuits that have examined these issues of arbitrability and who makes the threshold decision in terms of arbitrability, if I can say that, have all focused, of course, on the language of the parties' agreement. So if I look at the language of the agreement here, I guess I just want to get your thoughts on the provision that provides except as otherwise provided in this agreement. So the parties have agreed to binding arbitration that's going to be rules except as provided otherwise provided in this agreement. So why don't you tell me your view of that, because it seemed to me that maybe the other side's got the better argument on this. So I think not under Blanton, because the Blanton decision actually addresses this in the context of addressing the Schein case and an argument made in Blanton about a similar carve-out, more similar here, frankly, than to the Schein carve-out. And the court in Blanton, as I read this court's ruling in Blanton, basically was that we don't subscribe to this analysis of the carve-out because it conflates the issue of determining the scope of arbitrability and what is arbitrable, rather, with the scope of the clause itself. It sort of conflates both the merits, the substantive issue, and the question of who decides the question of arbitrability. But even if you were going to buy the argument, I read Blanton as even if you were going to buy the argument, as the Fifth Circuit has, that in some circumstances, a carve-out takes away from, makes a court or requires a court to decide the issue of arbitrability because of the carve-out provision. Look at Schein, the case that was relied on, discussed in Blanton and relied on by the court below, and the carve-out there was very different in very important respects. First, as Schein itself said, the placement of the carve-out provision is key. It's very important. And it made the point that in Schein, the placement was important because, as explained in Blanton, actually, because in effect, the placement of the provision, the carve-out in Schein, made it clear that we were not going to apply the AAA rules to this whole cadre of cases. In Schein, it was basically cases, actions seeking injunctive relief, intellectual property relief, or trade secret relief. And it said, we are going to apply the AAA rule, all disputes other than this cohort of disputes will be decided pursuant to the AAA rules. That's what Schein said. In Blanton, you acknowledge that, well, you could read that as limiting the cases to which the AAA rules apply. And Schein itself said, the primacy of that language, by putting it before at the beginning of the sentence, made that very point. Whereas other cases, including the Schein court noted, its own decision in Crawford in the Fifth Circuit, where the language was put at the end of the clause, did not have that effect, did not serve to carve out from the delegation of the jurisdiction decision to the arbitrability decision to the AAA, did not serve to carve it out. So first, this provision is much closer to Crawford than it is to Schein. Schein simply does not apply and does not get them there, even if you read Blanton as acknowledging that the Schein carve-out approach is appropriate. Second of all, in Schein, as again, the Schein decision makes very clear and explicit. In Schein, the language was actions involving injunctive relief, IP relief, trade secret relief. And the court said they didn't limit this just to claims. They made it the whole action. So if the carve-out, the AAA rules don't apply and the jurisdictional argument is not delegated. Here, that's not the language. This is the language that Schein used in counterpoise. Here, the language is only, it's not that any action involving injunctive relief, the only thing that is in the notwithstanding clause is each party shall be entitled to seek injunctive or equitable relief. So that's much closer to what Schein described in opposition to the Schein language. That is, if all you're doing is a claim for injunctive relief, that's different. But in Schein, the whole shoot and match, the whole action was carved out. That's not here. And in fact, here, the provision goes on to say, and nothing about this provision, the fact that injunctive relief can be decided by the court rather than by an arbitrator, takes away in any respect everything we've said before, which is that everything else gets decided by an arbitrator. My time is out. Okay, thank you. You'll have your four minutes of rebuttal. Mr. Sanders. Good afternoon, and may it please the court. Nathan Sanders on behalf of the appellee, Paul Dorsa. I want to start my time today by making clear what Maraca is asking for in this appeal, because I don't think that came through in the presentation of my esteemed adversary, Mr. Barmak. Maraca is asking this court to send this case to arbitration so that an arbitrator can decide the same issues of arbitrability that the district court already resolved at Maraca's request and in Mr. Dorsa's favor in a motion to dismiss decision that this court has already said can't be appealed until final judgment. And Maraca's ultimate goal is to achieve what I think can only be described as an absurd result, a ruling from an arbitrator that the retaliation claim is arbitrable in the face of a district court decision saying exactly the opposite. The court should put an end to this and affirm the district court for two reasons. First, to answer Judge Larson's question to Mr. Barmak, Maraca chose to have the district court decide the issue of arbitrability, and the law and principles of fairness say that Maraca needs to live with that choice. The second reason the court should affirm is that the carve-out language in the arbitration clause precludes the finding required by Supreme Court precedent that the parties clearly and uh legal doctrine that bars Maraca's delegation argument is the court's traditional forfeiture rule. By waiting until its motion to dismiss reply brief to raise the delegation provision for the first time, Maraca forfeited that argument. Courts around the country have found that delegation arguments can be forfeited just like any other. This court has never held otherwise, and Maraca offers no reason why forfeiture rules shouldn't apply. So so let's say we agree with you. Let's say that you know the district court um it wasn't raised until the reply brief. District court didn't address the who decides question um presumably because the district court thought it was forfeited because not raised until the waived because he asked the district court to um to decide the question of arbitrability. What happens now? So do we are we just done or is there still the question not the who decides question but the did the district court err in deciding this was arbitrable question? Is that question properly before us now or is it your position that we would he would go back you'd go to trial and at the end of trial he could then say oh the district court aired this case should have been in the other forum the whole time. Our position is the latter scenario your honor the the consequence of the decision in the first appeal was that the issue of the scope of the arbitration clause could not be appealed and cannot be appealed until there's a final judgment. Now Maraca does offer a fallback argument in its brief. They act as if this this scope issue the district court scope holding is now back before the court for de novo review but they never raised the scope issue in the motion to compel that's now being reviewed. Yeah the motion to compel they only say the arbitrator decides arbitrability. That that's correct your honor. But then the district court went on to reaffirm its prior holding with respect to whether the claim is actually arbitrable. So what does that mean for us? That that's absolutely correct your honor that's what the district court did and under the law of the case doctrine the way that this is now analyzed is not whether applying a de novo standard the court you know looks at the district court scope holding and either agrees or disagrees with it. The question the only question related to that issue that's before the court is did the district court abuse its discretion in reaffirming what it had already decided and refusing to reaffirm what it had already decided. And that's why the the waste management of Ohio case that Maraca cites makes clear the law of the case doctrine does apply to district court decisions and it restricts the ability to reconsider those decisions unless there is some type of convincing or extraordinary reason to go back on what the district court had already done. And as we just discussed your honor Maraca didn't offer any reasons in front of the district court to go back on that decision and it hasn't argued on this appeal that there's any extraordinary or convincing reason that the district court had to reconsider what it had already settled in the motion to dismiss decision. So is it basically your position that the motion to compel was untimely filed? In other words they needed to file a motion to compel it the compel arbitration at the outset and by waiting until after the district court had ruled and then an appeal they're just the motion is untimely or they they're barred from bringing it? Your honor our position is if Maraca had wanted to pursue this delegation provision it needed to put that delegation argument in its opening motion. It chose to file a motion to dismiss. What it should have done if it wanted to enforce the delegation provision was to file a motion to stay. Mr. Barmak argued during his presentation that the district court didn't have the power to compel arbitration in Texas and while that may be true Maraca should have asked for a stay which the district court was empowered to to grant that relief. I see and if the the district court had filed a motion to stay then then what you would have moved to compel arbitration or he could have moved to compel arbitration elsewhere? I thought your position was well he can't compel arbitration in Texas. Your honor what would have happened if they had asked for a stay in their first motion and and the district court had found that that to be warranted the case would have been stayed and then it would have been incumbent upon Mr. Dorsa to initiate arbitration proceedings in Texas. I see. It to to briefly address Maraca's principal argument and their main excuse for failing to raise this delegation argument until reply. Mr. Barmak repeated the argument that they make in their brief that they didn't realize that arbitrability would be an issue until Mr. Dorsa responded to the motion to dismiss and this is exactly the same type of argument that the 11th of the motion to dismiss. Maraca asked the district court to declare that the arbitration clause was valid to construe the arbitration clause and then dismiss the case with prejudice on that basis. So whatever Maraca claims it knew or didn't know now there's really no way the district court could do what Maraca was asking without addressing the scope and validity of the arbitrability. Moving to the second reason this court should affirm even if Maraca had preserved the delegation provision it's the delegation argument still fails on the merits because of the carve-out language in the arbitration clause. It's very important to remember when we're talking about a delegation issue the presumption in favor of arbitration is reversed. It's presumed that a court decides arbitrability unless the parties clearly and unmistakably show their their intent to the contrary. Here the carve-out language in the arbitration clause is just like the language the second circuit confronted in NASDAQ and just like the language the fifth circuit confronted in Henry Schein in which both courts said there wasn't a clear and unmistakable delegation. The clause here begins the very first phrase of this clause says except as provided below the parties must mediate and then arbitrate under the AAA rules. And then what is provided below is a carve-out provision that says the parties can pursue injunctive and equitable relief in court and here's I think the most important phrase without first submitting the matter to mediation or arbitration. And so what this language means is again just like in Henry Schein in NASDAQ the AAA rules are not triggered meaning the delegation within them is not triggered until a court has looked at the carve-out and determined whether or not it applies. Blanton did not reject the Henry Schein analysis and the clause here is not like the one in Blanton. Blanton wrote approvingly of Henry Schein but didn't apply it because the clause there was fundamentally different. The clause in Blanton that incorporated the AAA rules what excuse me the provision in Blanton of the arbitration clause that incorporated the AAA rules was a standalone section of that section that limited the application of the AAA rules. This is completely different than what we have here where before and after the language incorporating the AAA rules within the same provision there's clear carve-out language requiring a court to address arbitrability. So can I move you off the question of who decides arbitrability? I mean I guess you think that's the whole that's the only thing before us but your brief addresses these other cases page and the one that involved the lawyer I can't remember the name of it. So if we were to get to the question I mean we could even assume the who decides question is waived but if we thought that the question for us is is this claim arbitrable did the district court err in finding that that was the district court right to think that page controls because your language is seems more similar to Panapucci than to page. Your honor my first response to that is to go back to what I said earlier which is that issue's not properly before the court because it's really only a question of did the district court abuse its discretion in reaffirming what it had done before so it's not something the court needs to to explore under a de novo standard or review but to answer your question yes the district court absolutely got it right and the reason it did was because there's really no distinction of any material significance that makes this different from page. There is the phrase in connection with but I think the key thing to remember about that phrase is that it's still modified by the term arising the most natural plain English way to read that sentence is it the clause applies to disputes arising out of or in connection with the agreement meaning the claim has to originate because of the agreement and just like in page the retaliation claim here doesn't originate because of the agreement it exists because Mr. Dorsa is alleging violation of statutory rights that he has regardless of whether he was working under an agreement. But that's true in Panapucci too right it wasn't her claim like a title 7 sex discrimination claim so that exists independent of an agreement and yet the court there said well we can't know whether her pay was cut relative to her partners without looking at the agreement and here the argument is that that you your client claims he was fired because of FCA retaliation but the company says no it was because of workplace harassment and so there was cause so we need to look at the agreement what constitutes cause and did he violate it. The first thing I would say about the Panapucci decision your honor is that the language there was broader so in that clause there was related to language as opposed to in connection arising in connection with which is more limited but the second thing I would say is that in Panapucci the unique nature of that claim required reference to the agreement this was an attorney who had sued the firm saying that she wasn't paid what she deserved to be paid and to figure out whether or not that was true the court recognized correctly that you've got to figure out what the baseline is that she should have been paid under the terms of the partnership agreement here you don't have to refer to the agreement to determine whether or not Morocco was liable on the return excuse me whether yeah whether Morocco was liable for retaliation the question is did Morocco terminate Mr. Dorsa for engaging in protected activity or did Morocco terminate him for some other reason and Morocco doesn't have to prove that that some other reason was covered by the four cause provision of the contract we're not asking for severance that may have been due for a without cause termination so under this court standard Mr. Dorsa's retaliation claim can be maintained without reference to the contract I see my time is up so we respectfully ask that the court affirm the district court okay thank you Mr. Sanders so let me first start with what the provision here actually says which is very different than as presented by Mr. Sanders Mr. Sanders in his presentation of what this language says in 5.10 the employment agreement pushed together two independent provisions and that's because he needs that first clause except as provided below to apply to the second clause the second provision the first clause does not relate and he also pushed together in his discussion summary of they were one thing that is not what the clause does 5.10 in the first sentence starting with except as provided below only only references the triple a mediation rules has nothing to do with this case it is the third sentence of the clause which hat does not begin with any exception language that's that talks about disputes claims and disagreements and says that those must be resolved in accordance with the provisions of the employment arbitration rules of the aaa and except as otherwise provided such arbitration shall be the sole means of dispute resolution so this is just like Crawford the exception is at the end not at the beginning what they rely on as being at the beginning because they have nothing else relates to the mediation rules and not the arbitration rules secondly talking about an absurd result in response to Judge Larson's question I take it that Mr. Sanders position Mr. Dorse's position I should say is that maraca has no recourse it is stuck with even an erroneous decision by the district court below on the question of whether the arbitration agreement does or does not apply what are we to do wait until years down the road after trial a jury has decided whatever it's decided to then ask this court to consider whether the case was properly decided by the court and a jury rather than an arbitration that makes no sense but I mean yeah I agree that doesn't that seems incredibly inefficient but isn't that why you were supposed to move to compel arbitration at the outset and ask for a stay like that's the point of the stay provision of and we have when this court now after you already went through the whole correct and as that is true and as the dissent at least acknowledged in the in the first ruling in this case the there is a long history in this circuit of motions to dismiss being used as a way to get the issue of arbitrability before the court I mean and that is a fact and Judge Rogers and his decision took the view that because we didn't essentially use the right words and file and add on that specifically we're filing under the FAA in a matter that he thought was necessary that this court did not then have the ability to decide the issue but it does have that ability now what if we had simultaneously filed a motion to dismiss and a separate petition to compel or to stay at that time this court would have had an opportunity and it does now have that opportunity to get to this issue if you believe that the issue of arbitrability is appropriate for the court at all as you know we think it is not appropriate for the bar mac and thank you both the council for your arguments this afternoon and again we appreciate them and the briefing that you have provided us with that the case will be taken under submission and the clerk may adjourn court this honorable court is now adjourned